FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY 24 PM 1:07

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CLIFTON HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-97-AR-2044-S |
| | ) | |
| HOME QUARTERS WAREHOUSE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
MAY 24 1999

**MEMORANDUM OPINION**

Presently before the court is a motion for summary judgment by defendant, Home Quarters Warehouse, Inc. ("HQ"). For the reasons set forth below, the court determines that HQ's motion is due to be granted. Because this court is substantially in agreement with HQ's well-written and persuasive brief, the court finds it appropriate to write an abbreviated opinion in this case and to adopt the reasoning presented by HQ. By separate order, the Clerk shall be directed to file any briefs not previously made part of the record.

The material facts of this case are few and undisputed. Plaintiff, Clifton Hall ("Hall"), a black male, was hired by HQ in November, 1989 and worked there until his termination on September 16, 1994. Hall had a poor employment record, receiving several evaluations which described his performance as "marginal." Despite the fact that Hall was fully informed about

HQ policy against harassment of customers, Hall was twice the subject of complaints by female customers who alleged he had sexually harassed them.  Although Hall alleges that several white, male co-workers acted inappropriately toward women customers, there is no record of similar complaints against any other male employees at the HQ store where Hall worked.  After the first complaint, Hall was reprimanded, reminded of HQ policy, and informed that subsequent incidents of harassment could lead to his termination.  After the second woman complained, General Store Manager Ed Travis, a black male, made the decision to terminate him.  Hall filed a charge with the EEOC, alleging that his termination was racially motivated.  After receiving notice of his right to sue, Hall instituted the present action.[1]

    Hall's claims fail for two reasons.  First, Hall is unable to make out a *prima facie* case of race discrimination, because the undisputed facts show that HQ did not replace him with a new employee outside Hall's protected class.  To make out a *prima facie* case under the *McDonnell Douglas*[2] standards, Hall would

---

    [1] Hall will not be allowed to argue retaliation in this action, because Hall's EEOC complaint alleges that his termination was grounded upon racial animus alone.  Hall's claims are barred to the extent that he now attempts to argue that his termination was motivated by HQ's desire to retaliate against him for a previously-filed charge of discrimination.

    [2] *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973).

need to show 1) that he is a member of a protected class, 2) that he suffered adverse employment action, 3) that he was replaced by someone outside his protected classification, and 4) that he was qualified for the job.  Hall fails to meet the third criterion.  He does not meet the fourth if a customer harasser is automatically not qualified.  Although HQ did not hire *anyone* into Hall's department for a substantial amount of time after Hall's termination, the next person hired was a black male, like Hall.  Hall's case fails on this ground alone.  A good argument can be made that Hall fails to satisfy the fourth criterion, as well, because of poor performance generally.[3]

Assuming *arguendo* that Hall does state a *prima facie* case, HQ more than adequately rebuts any presumption of discrimination created thereby.  HQ argues convincingly that Hall was terminated for legitimate, non-discriminatory reasons.  As HQ's brief states, "The evidence regarding the reason for Plaintiff's termination is clear.  HQ *terminated* Plaintiff because he sexually harassed a female customer, and, after being warned not to ever do it again or he could be terminated, he sexually harassed another female customer."  *Def.'s Brief*, at 14 (emphasis added).  The court assumes that defendant made a simple

---

[3] Hall's history of poor performance reviews and disciplinary actions while employed at HQ, well-documented by the exhibits to HQ's motion for summary judgment, indicates that Hall consistently performed marginally or unsatisfactorily.

typographical error in the quoted statement, above, because the record indicates that Hall was disciplined, not terminated, after the first complaint of sexual harassment was made against him. Only after the second incident, committed in defiance of a clear disciplinary warning, was Hall terminated. HQ's rebuttal of Hall's *prima facie* case, if he had made out one, is thus grounded on undisputed facts.

Hall does attempt to create a dispute of material fact as to whether HQ's proffered reason for his termination is merely pretext for racially discriminatory motives. Not one of these attempts is material. First, Hall submits the affidavit of Kerry Cooper to suggest that Mark Snider executed an elaborate scheme to get Hall fired. According to Cooper, Snider and an unidentified white man and white woman collusively staged events out of which the complaint of harassment arose. Cooper says he witnessed the white couple enter the store and that he overheard some of their conversation with Snider. Cooper insinuates that Snider "set up" Hall, but his story assumes that the alleged mystery woman, along with her alleged mystery husband, were the same persons who made allegations of harassment. To the contrary, the undisputed record indicates that the complaint was made by Gloria Butler, a black female, after she and her mother (not her husband) visited the store. Gloria's husband, Monroe, was a former employee at HQ, and although he did visit the store

with his wife at around the same time as the alleged harassment, the incident from which the complaint arose did not occur when Monroe was with her.  Even if Cooper is telling the truth about the fact that he saw a white couple visit the store, speak with Snider, and interact with Hall, he is describing events unrelated to the complaint which resulted in Hall's termination.  No reasonable jury could conclude that Cooper's insinuations demonstrate pretext on HQ's part.

    Hall also alleges that several white employees acted inappropriately toward women customers, but were not disciplined. If true, Hall might succeed in recreating an inference of discriminatory motive.  However, the evidence does not show that HQ ever received complaints about the behavior of these employees, in contrast to the two complaints received against Hall.  With no first-hand knowledge, Cooper's mere impression that one woman had once complained about those employees is hearsay, at best, and cannot suffice as a matter of law to create an inference of discriminatory motive.  In fact, Hall presents no evidence that HQ management was aware of such alleged conduct by those white male employees, if it did occur.  In sum, Hall fails to create a material dispute about the treatment of white employees as compared to the disciplinary treatment he received. Hall does allege that several racist remarks were made by white employees during his employment; he does not show, however, that

any such remarks were made by anyone with authority to terminate him or by anyone who actually participated in his termination. He does not even show that management was aware of such remarks. Indeed, both Ed Travis, who made the decision to fire Hall, and Donald Love, who was Store Manager in Hall's department, were themselves black.

### Conclusion

In short, Hall fails to make out a *prima facie* case. Even assuming he could, he has not presented evidence to demonstrate that HQ's articulated reason for his termination is merely pretextual. HQ's motion for summary judgment is due to be granted. A separate and appropriate order will be entered.

DONE this 24th day of May, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE